# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
May 15, 2012 Session

## STATE OF TENNESSEE v. ERIC SHAVONN SAYERS

**Appeal from the Criminal Court for Sullivan County**
**No. S54,842      Robert H. Montgomery, Jr., Judge**

**No. E2010-01691-CCA-R3-CD - Filed January 24, 2013**

The Defendant, Eric Shavonn Sayers, submitted a best interest guilty plea pursuant to North Carolina v. Alford, 400 U.S. 25 (1970), to criminal conspiracy to commit theft of property valued over $1000, a Class E felony, eleven counts of criminal simulation, Class E felonies, two counts of theft of property valued over $1000, Class D felonies, and driving without a license in his possession, a Class C misdemeanor. See T.C.A. §§ 39-12-103, 39-14-115, 39-14-103, 55-50-351 (2010). The parties agreed to an effective six-year sentence as a Range III, persistent offender with the manner of service to be determined by the trial court. At the sentencing hearing, the trial court ordered the Defendant to serve his sentence in confinement. On appeal, the Petitioner contends that (1) the trial court failed to make the required factual findings to support the Defendant's guilty pleas, (2) his convictions for criminal simulation and theft violate double jeopardy principles, and (3) the trial court erred by denying alternative sentencing. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Stephen M. Wallace, District Public Defender; Leslie S. Hale (at the guilty plea hearing) and Patrick Denton (at sentencing), Assistant Public Defenders; and Wesley D. Stone (on appeal), Knoxville, Tennessee, for the appellant, Eric Shavonn Sayers.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Teresa Ann Nelson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the plea submission hearing on June 4, 2009, the trial court reviewed the terms of the plea agreement and the various constitutional rights the Defendant waived by pleading guilty. The Defendant entered a best interest plea because he disputed some of the State's factual allegations. The Defendant, though, stipulated that the facts contained in the affidavits of Detective Brad Tate would have been the State's proof had there been a trial.

According to Detective Brad M. Tate's first affidavit of complaint,

> On or about August 17th, 2007, a black male, identified as Eric Shavonn Sayers, presented a counterfeit check at Food City. . . . The check . . . was made out to [the Defendant] from Scott Power/Snelling Personnel Services for $567.34. The check was returned as counterfeit. The check has TN ID 084924661 wrote [sic] on it and the endorsement of Shavonn Sayers. The TN ID number belongs to Sayers and the signature appears to match the signature on Sayers' TN ID. The surveillance video shows a male known to me as Eric Shavonn Sayers.

> On or about January 25th, 2008, a black male, identified as David A. Williams, presented a counterfeit check at First Bank and Trust. . . . The check . . . was made out to Williams from Snelling Personnel Services for $502.30. The check was returned counterfeit. The surveillance video shows Williams and Sayers in the vehicle together.

> On or about January 28th 2008, a black male, identified as Eric Shavonn Sayers, presented a counterfeit check at Food City. . . . The check . . . was made out to Shannon Sayers from Snelling Personnel Services for $583.25. The check was returned as counterfeit. The check has TN ID 084924661 wrote [sic] on it and the endorsement of Shannon Sayers. The TN ID number belongs to Sayers and the signature appears to match the signature on Sayers' TN ID. The surveillance video shows a male known to me as Eric Shavonn Sayers. The check also shows a thumb print of the presenter and the surveillance video shows Sayers putting his print on the check.

> On or about February 3rd 2008, a black male, identified as Eric Shavonn Sayers, presented a counterfeit check at Food City. . . . The check . . . was made out to Shannon Sayers from Snelling Personnel Services for $589.95. The check was returned as counterfeit. The check has TN ID 084924661 wrote [sic] on it and the endorsement of Shannon Slayers. The TN

ID belongs to Sayers and the signature appears to match the signature on Sayers' TN ID with the addition of an "L" for Slayers. The surveillance video shows a male known to me as Eric Shavonn Sayers. The check also shows a thumb print of the presenter and the surveillance video shows Sayers putting his print on the check.

According to Detective Brad Tate's second affidavit of complaint,

On or about February 5th, 2008, two black males identified as Keith Crawford and Eric Shavonn Sayers, presented a counterfeit check at Food City. . . . The check was made out to Keith Crawford from Snelling Personnel Services for $626.80. The check was declined as counterfeit. The check had TN DL 101851079 wrote [sic] on it and the endorsement of Keith Crawford. The TN DL number belongs to Crawford and the signature appears to match the signature on Crawford's TN DL. Surveillance video from Food City shows a male known to me as Eric Shavonn Sayers. The other male appears to be Keith Crawford when compared to the image of Keith Crawford on his Tennessee driver['s] license. Sayers accompanies Crawford and is at the counter with him.

Later on February 5th, 2008, Sayers was arrested and read his rights. He signed a Miranda waiver. He stated that he had gone with Mr. Williams to several banks to get money. He admitted that he signed his name on the payer's endorsement line on check # 910642. He stated he did this at Williams' request. Mr. Sayers also stated that he had been with Keith Crawford this date. Crawford was trying to get one of the counterfeit checks cashed. . . . He went on to say he had not cashed any of the checks; he had never manufactured or printed any of the checks; and that no materials or items would be found in his apartment. . . .

On February 6th 2008, I obtained a search warrant . . . [and] served the warrant and took into evidence: a Compaq laptop computer with accounts for "Eric" and "Shavonn." The Eric account had a program, MyCheckbook, that had the templates and some of the above checks in the program; blank check paper that is consistent with the counterfeit checks; several pieces of paper with printing that match the check numbers and payees on the counterfeit checks (some on the back of papers with Sayers' name on them; three other counterfeit checks (1. Titled to Universal Telecoms, numbered 789558, "payable to" line is blank, 2. Titled to Snelling Personnel Services, numbered 910645, for $603.09, "payable to" Shannon Sayers, 3. Titled to Snelling

Personnel Services, numbered 910652, for $665.92, "payable to" Keith Crawford, the check had the pay stub information across the bottom of the check); a Lexmark printer with printing of pay stub information on the mechanism, as though it printed with no paper in it.

According to Detective Brad M. Tate's third affidavit of complaint,

> David Williams was arrested and read his rights. He signed a Miranda waiver. He gave a written confession that he presented checks, knowing they were counterfeit. He further stated that Eric Shavonn Sayers was the person manufacturing the checks. He stated that Sayers would provide him the checks under the agreement that Williams' [sic] would cash the checks and give half the money to Sayers.

At the sentencing hearing, the Defendant testified that David Williams lived with him around the time the offenses occurred. He agreed Mr. Williams was arrested as a codefendant and said Mr. Williams printed the checks from the Defendant's computer and cashed the checks. He denied knowing Mr. Williams printed counterfeit checks. He said Mr. Williams gave him two checks, which he understood were for rent and living expenses. He agreed the checks were not written from Mr. Williams's personal bank account and agreed the checks were from Snelling Personnel Development. He denied asking why Mr. Williams gave him checks from Snelling Personnel Development and said he simply cashed the checks.

The Defendant testified that the majority of his criminal charges in Carter and Washington Counties were related to Mr. Williams's counterfeit checks. He agreed he was charged with drag racing, though he denied participating. He said that he was charged with identity theft in 2008, that it was related to a misunderstanding with his Social Security number, and that he pleaded guilty. He said that he had previous convictions from Washington State related to a worthless check. He admitted writing the check and cashing it and said someone else showed him how "to do it."

The Defendant testified that he was responsible for his charges because he "hung around" the wrong people. He said he should not have allowed someone he did not know well to move into his home and use his property without his supervision. He said he was "solely and purposely" responsible for the things that occurred in his home.

The Defendant testified that he had been in confinement for almost two years at the time of sentencing. He said that he had not been in jail for this length of time before and that he realized that it "is for real. This ain't no joke." He said that while he had been in jail, he

had participated in Alcoholic Anonymous and completed the Twelve Steps drug rehabilitation program. He denied having a "drug problem" and said he had "a problem in general." He said that his problem and "habit" was "hanging out" with people who influenced and enticed him to do things. The court received as an exhibit a June 10, 2009 letter of recommendation from Johnson County Sheriff's Sergeant Hammonds stating that the Defendant had never been disciplined or received a "write up," that the Defendant had attended all classes the jail offered, and that he had been respectful to all the guards.

The Defendant testified that he studied the Bible while in jail and that he became an ordained minister through Universal Life Church. Certificates showing that the Defendant completed the sixty-six books of the Bible and that the Defendant was ordained on October 2, 2009, were received as exhibits. He said that he met Pastor Charles Martin when his uncle died and that Mr. Martin was the reason he enrolled in his correspondence courses. He said that Pastor Michael Cummings was his grandmother's pastor and that he met him about one year before his arrest. Letters from Mr. Martin and Mr. Cummings were received as exhibits requesting the trial court sentence the Defendant to probation.

The Defendant testified that he had a job waiting for him if the court placed him on probation. He said that his father, who owned a trucking company, offered him a job once he obtained a CDL license. He said his route could be limited to Tennessee.

The Defendant testified that he had good mental and physical health and said that his knees ached during cold weather from a gunshot he received in December 2007 or January 2008 while someone tried to break into his home. He said he spent about five years in the military and two years in the reserves. He said his parents were unable to attend the sentencing hearing because of health issues. He said that his father had kidney disease and that he wanted to determine whether he could donate one of his kidneys to his father.

On cross-examination, the Defendant testified that he did not have a drug or alcohol addiction at the time he committed the offenses and that he worked "a little bit here and there." He said that he worked at Exide for about six months before he was laid off and that he worked odd jobs. He agreed that he had previous convictions for criminal simulation, failure to appear, assault and battery, vandalism, drag racing, misdemeanor reckless endangerment, driving with a suspended license, thirty counts of writing bad checks, three counts of identity theft, theft of property valued at more than $1000 but less than $10,000, speeding, three counts of forgery, felony issuance of a bank check, and theft of property valued at more than $500 but less than $1000. The presentence report was received as an exhibit. He agreed that he had forgery and obtaining money under false pretenses charges pending in Virginia and that he failed to appear because he was in jail.

The Defendant testified that he cashed "many" checks he received from Mr. Williams and agreed that the checks were drawn from Wells Fargo. He denied knowing Mr. Williams created counterfeit checks. He agreed the checks were made payable to "Shannon Sayers," "Eric Sayers," and "Shavon Sayers." He agreed the forged checks were found on his computer under an account named Eric. He denied that Mr. Williams had an account on the Defendant's computer. He denied that the police found checks, blank checks, and counterfeit checks in his car when he was arrested in February 2008 and said that the police only found a check stub in the backseat. He agreed his explanation was that it belonged to Mr. Crawford, who sat in the backseat where it was found.

The Defendant testified that he received probation in Washington state for felony issuance of a bad check, that he was convicted of theft of a motor vehicle one year later, and that he received "community custody" after serving two months in jail. He agreed he was convicted of forgery one year later in Washington and was sentenced to probation after serving four months in jail. He agreed that he had been convicted of numerous crimes in Tennessee and that he had received probation and served time in confinement. He agreed that he received community corrections in Washington and Carter Counties and that he continued to violate the law. He agreed he had pending probation violation cases in various counties. On redirect examination, he stated that the latest probation violations were a result of the instant charges. He said that before these charges, the longest he had been in confinement was sixty days and that he had been in jail for almost two years.

The trial court found that the Defendant was the leader in cashing the counterfeit checks with Mr. Williams and Mr. Crawford. See T.C.A.§ 40-35-114(2) (2010). The court found that at the time the offenses were committed, the Defendant was on probation for two felony identity theft convictions in Washington County. See id. § 40-35-114(13). The court gave great weight to the Defendant's being on probation. The trial court found that the Defendant had a sustained intent to violate the law based upon the Defendant's criminal history and the facts and circumstances of the case. The court refused to find that the Defendant acted under duress or domination by another person and found that the Defendant acted willingly and knew "exactly" what was going on.

The trial court found that the Defendant's criminal behavior did not cause or threaten to cause serious bodily injury and stated that it gave "essentially no weight" to the lack of physical injury "because it exists in all financial offenses." See id. § 40-35-113(1) (2010). The court refused to find that the Defendant played a minor role in the crime, made any attempt to compensate the victim, lacked substantial judgment because of youth, suffered from a mental or physical condition, or assisted the police in uncovering other offenses committed. See id. § 40-35-113(4), (5), (6), (8).

The trial court gave some weight to the rehabilitative efforts the Defendant made while in custody and to the Defendant's giving a statement to the police. The court found that the Defendant was court-martialed while in the military. The court found that the Defendant had a criminal history showing a disregard for the laws and morals of society and that the Defendant failed at past efforts of rehabilitation. The court found that confinement was necessary to protect society by restraining the Defendant who had a long history of criminal conduct and that measures less restrictive were "frequently . . . applied unsuccessfully." The court sentenced the Defendant to six years' confinement. This appeal followed.

As a preliminary matter, the State contends that the appeal should be dismissed because the Defendant failed to file a timely notice of appeal and that waiver is not in the interest of justice. The Defendant argues the timely filing should be waived. Tennessee Rule of Appellate Produced 4(a) states,

> In an appeal as of right to the . . . Court of Criminal Appeals, the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from; however, in all criminal cases the "notice of appeal" document is not jurisdictional and the filing of such document may be waived in the interest of justice.

The record shows that the judgments of conviction were filed on January 11, 2010, and that the Defendant, pro se, filed the notice of appeal on August 9, 2010. Neither counsel at the guilty plea hearing nor counsel at the sentencing hearing filed a notice of appeal. Appellate counsel states in the brief that counsel did not take the proper steps to determine whether the Defendant wanted to appeal his sentence and failed to comply with Tennessee Rule of Criminal Procedure 37(e)(3), requiring appointed counsel to continue representing "the defendant throughout the proceedings, including any appeals, until the case has been concluded or counsel . . . allowed to withdraw. . . ." As a result, we will consider the Defendant's issues on the merits.

**I**

The Defendant contends that the trial court failed to make the required factual findings to support the Defendant's plea pursuant to Tennessee Rule of Criminal Procedure 11(b)(3). He argues that although the facts were contained in the affidavits of complaint, it was unclear to which affidavits the parties referred at the plea submission hearing. He argues that the affidavits fail to support a factual basis for the criminal simulation convictions in counts 6 and 12 of the presentment, the criminal conspiracy conviction in count 1, and the theft

convictions in counts 15 and 16. The State responds that a sufficient factual basis was presented to support the Defendant's best interest pleas because the parties stipulated to the factual basis that the State would have presented had the case gone to trial.

We must first determine whether the Defendant has an appeal as of right with regard to the sufficiency of the factual basis underlying his best interest pleas. Although Tennessee Code Annotated section 16-5-108(a) provides this court has subject matter jurisdiction over final judgments in criminal cases and "other cases or proceedings instituted with reference to or arising out of a criminal case," an appeal as of right is not automatic. State v. Phillips, 968 S.W.2d 874, 877 (Tenn. Crim. App. 1996) (concluding that a defendant does not necessarily appeal his case properly simply because the court has "authority over [the] case and the constitutional issue raised"). Generally, a defendant who pleads guilty to a criminal offense waives his or her right to appeal. Hobbs v. State, 73 S.W.3d 155 (Tenn. Crim. App. 2001).

Tennessee Rule of Appellate Procedure 3(b) states,

In criminal actions an appeal as of right by a defendant lies from any judgment of conviction entered by a trial court from which an appeal lies to the . . . Court of Criminal Appeals: (1) on a plea of not guilty; and (2) on a plea of guilty . . . . , if the defendant entered into a plea agreement but explicitly reserved the right to appeal a certified question of law dispositive to the case pursuant to and in compliance with the requirements of [Tennessee Rules of Criminal Procedure] Rule 37(b)(2)(i) or (iv) . . . , or if the defendant seeks review of the sentence and there was no plea agreement concerning the sentence, or if the issues presented for review were not waived as a matter of law by the plea of guilty . . . and if such issues are apparent from the record of the proceedings already had.

We conclude that the issue was waived as matter of law. See State v. James Mario Starnes, No. M2002-01450-CCA-R3-CD, slip op. at 3-4 (Tenn. Crim. App. Mar. 13, 2003) (concluding that whether there was sufficient factual evidence supporting the defendant's guilty plea to especially aggravated robbery was waived as a matter of law by the defendant's guilty plea and not reviewable on appeal of his conviction), perm. app. denied (Tenn. Jun. 30, 2003). This issue is not properly before us.

The Defendant contends that his convictions for criminal simulation and theft violate double jeopardy principles. He argues that the criminal simulation charges contained in counts 2, 3, 4, 5, and 6 of the presentment formed the basis of the theft of property valued over $1000 conviction in count 15. He also argues that the criminal simulation convictions in counts 7, 8, and 9 formed the basis of the theft of property valued over $1000 conviction in count 16. The State responds that double jeopardy principles were not violated and that the Defendant did not receive multiple punishments for the same offenses. We agree with the State.

In Tennessee, the same elements test in Blockburger v. United States, 284 U.S. 299, 304 (1932), is the applicable test for determining whether multiple convictions under different statutes constitute the same offense for double jeopardy principles. State v. Watkins, 362 S.W.3 530, 558 (Tenn. 2012). When the "same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." Blockburger, 284 U.S. at 304. Our supreme court has stated that "the Blockburger test requires an examination of the statutory elements in the abstract, without regard to the proof offered . . . in support of the offenses." Watkins, 362 S.W.3d at 544 (citing State v. Dixon, 509 U.S. 688, 696 (1993)).

As a threshold issue, this court must first determine whether the convictions arise from the same act or transaction. Counts 2, 3, 4, 5 and 6 of the presentment surround the Defendant's creating various counterfeit checks between January 23, 2008, and February 5, 2008, with the intent to sell, pass, or otherwise utter them in violation of Tennessee Code Annotated section 39-14-115 (2010). Count 2 addresses counterfeit check number 910644, count 3 addresses counterfeit check number 910642, count 4 addresses counterfeit check number 910643, count 5 addresses counterfeit check number 910646, and count 6 addresses counterfeit check number 910641. Each check was cashed on a different date. Count 15 of the presentment surrounds the theft of property valued at more than $1000 from First Bank and Trust Company between January 23, 2008, and February 5, 2008, in violation of Code section 39-14-103. We conclude that the acts arising from the Defendant's convictions in counts 2, 3, 4, 5, and 6 were the basis for his conviction in count 15.

Counts 7, 8, and 9 of the presentment surround the Defendant's possessing counterfeit checks, which appeared to have value, with the intent to harm or defraud another between August 17, 2007, and February 6, 2008. Count 7 addresses counterfeit check number 74401, count 8 addresses check number 910651, and count 9 addresses check number 910646. Each check was cashed on a different date. Count 16 of the presentment surrounds the theft of

property valued at more than $1000 from Food City between August 17, 2007, and February 3, 2008, in violation of Code section 39-14-103. We conclude that the acts arising from the Defendant's convictions in counts 7, 8, and 9 were the basis for his conviction in count 16.

Criminal simulation is committed, in relevant part, when "[a] person . . . who, with the intent to defraud or harm another possesses an object so made or altered, with intent to sell, pass, or otherwise utter it." T.C.A. § 39-14-115(a)(1)(B) (2010). Theft of property is committed when "[a] person . . . , with the intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a) (2010). With regard to criminal simulation, the State was required to prove beyond a reasonable doubt that the Defendant, with the intent to defraud or harm, possessed an object that was made or altered with the intent to sell, pass, or utter it. An intent to defraud and possession of an object made or altered with the intent to sell, pass, or utter it are not elements of theft of property. We conclude that criminal simulation and theft of property are not the same offense for double jeopardy purposes and that the Defendant was not subjected to multiple punishments for the same offense.

**III**

The Defendant contends that the trial court erred by denying him an alternative sentence. He argues that he was eligible for probation and that he showed his suitability for probation. The State responds that it the trial court properly denied alternative sentencing. We agree with the State.

The Tennessee Supreme Court recently adopted a new standard for review of sentencing in State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). In Bise, the court held that length of sentence "within the appropriate statutory range [is] to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" Id. at 708. More recently, our supreme court has applied the abuse of discretion standard with a presumption of reasonableness to "questions related to probation or any other alternative sentences." State v. Christine Caudle, — S.W.3d —, —, No. M2010-01172-SC-R11-CD, slip op. at 7 (Tenn. Nov. 27, 2012).

The Defendant argues he was eligible for probation because his sentence was less than ten years. See T.C.A. § 40-35-303(a) (2010) (providing that a defendant shall be eligible for probation if the sentence actually imposed is ten years or less). The Defendant was eligible for probation. See T.C.A. §§ 40-35-303(a) (2006) (amended 2007, 2009, 2010). However, mere eligibility does not automatically entitle a defendant to probation. See Fletcher, 805 S.W.2d at 787; State v. Beverly Dixon, No. W2004-00194-CCA-R3-CD, slip op. at 10 (Tenn. Crim. App. June 30, 2005) (citing State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim.

-10-

App. 1998)).  Furthermore, the statutory provisions regarding alternative sentences must be read together with the Sentencing Act as a whole.  See Fletcher, 805 S.W.2d at 787-88; State v. Wagner, 753 S.W.2d 145, 147 (Tenn. Crim. App. 1988).

When determining if incarceration is appropriate, a trial court should consider if:

(A) Confinement is necessary to protect society by restraining a  defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1) (2010); see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

The Defendant presented evidence that he completed the Twelve Steps Program and attended Alcoholic Anonymous, that he had good behavior while in confinement, and that he became an ordained minister.  Although the Petitioner claimed he did not know that Mr. Williams was using the Defendant's home computer to create and print counterfeit checks, the court discredited the Defendant's testimony.  Instead, the court found that the Defendant knew about the counterfeit check enterprise, knowingly cashed the counterfeit checks, and was the leader in the scheme.  His lack of candor reflects poorly on his suitability for probation.  The record shows that the Defendant had an extensive criminal history and was on probation at the time the offenses were committed.  Although the Defendant presented evidence of his military service, he was court-martialed for forgery.  The court denied alternative sentencing to protect society by restraining the Defendant who has a long history of criminal conduct and because less restrictive measures had been unsuccessful previously.  The Defendant has not established that the trial court abused its discretion by denying probation.  The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____

JOSEPH M. TIPTON,  PRESIDING JUDGE